UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

      Plaintiff,

v.                                                     Criminal No. 15-55 (JNE/TNL)
                                                   ORDER

Dean Richard Peterson,

      Defendant.

      A grand jury charged Defendant with one count of Armed Career Criminal in Possession of a Firearm. The firearm was found during a search of a residence in Morton, Minnesota, by officers who were executing a search warrant that a state judge had issued. Defendant moved to suppress physical evidence obtained as a result of the search. In a Report and Recommendation dated July 28, 2015, the magistrate judge recommended that Defendant's motion to suppress be denied. Defendant objected to the Report and Recommendation. According to Defendant, the Report and Recommendation "wrongly recites a fact contained" in an affidavit that supported the application for the search warrant, the affidavit did not establish probable cause to issue the search warrant, and the good-faith exception to the exclusionary rule does not apply. Acknowledging the Report and Recommendation's misstatement of one paragraph of the affidavit, the government asserted that the Court should correct the misstatement and otherwise adopt the Report and Recommendation. The Court has conducted a de novo review of the

record.[1] *See* D. Minn. LR 72.2(b). For the reasons set forth below, the Court declines to adopt the Report and Recommendation. The Court denies Defendant's motion to suppress.

### *Legitimate expectation of privacy*

A defendant who moves to suppress evidence on the basis of an unlawful search bears the burden of providing that he had a legitimate expectation of privacy in the place that was searched. *United States v. Maxwell*, 778 F.3d 719, 732 (8th Cir.), *cert. denied*, 135 S. Ct. 2390 (2015), *and cert. denied*, 135 S. Ct. 2827 (2015), *and cert. denied*, 2015 WL 4078622 (U.S. Oct. 5, 2015); *United States v. Stringer*, 739 F.3d 391, 396 (8th Cir. 2014). To demonstrate he had a legitimate expectation of privacy in the place searched, the defendant must show that he asserted a subjective expectation of privacy in the place searched and that his subjective expectation of privacy is objectively reasonable. *United States v. Bearden*, 780 F.3d 887, 892 (8th Cir. 2015).

In this case, Defendant filed a 2-page motion that sought to suppress physical evidence obtained as a result of the search of the Morton residence, asserting that the affidavit that supported the application for the search warrant did not establish probable cause to issue the warrant. In a discovery declaration and outline of pre-trial motions filed in anticipation of a hearing before the magistrate judge, Defendant represented that

---

[1] No copy of the affidavit was submitted in connection with Defendant's objections or the government's response. To date, no copy of the affidavit has been filed. After the Court had issued an Order that notified Defendant his objections would be considered waived unless the Court received a copy of the affidavit, Defendant submitted a copy of the affidavit by letter dated September 4, 2015. The government did the same four days later. The parties shall file their submissions. *See* D. Minn. LR 49.1(b).

the parties did not anticipate the need to call witnesses, that they agreed Defendant's motion to suppress was "a 'four corners' challenge," and that they would ask for a briefing schedule to submit memoranda regarding the motion to suppress.  At the hearing before the magistrate judge, the parties agreed to submit the search warrant after the hearing.  They also agreed to submit memoranda within a few weeks.  In his memorandum, Defendant asserted that probable cause to issue the warrant did not exist and that the good-faith exception to the exclusionary rule does not apply.  Citing statements in Defendant's memorandum, the government responded that he had no reasonable expectation of privacy in the Morton residence.  The government also argued that there was probable cause to issue the warrant and that the good-faith exception to the exclusionary rule applies, *see United States v. Leon*, 468 U.S. 897 (1984).

    The magistrate judge recommended that Defendant's motion to suppress be denied.  The magistrate judge concluded that the affidavit established probable cause to issue the search warrant.  In the alternative, the magistrate judge concluded that the good-faith exception to the exclusionary rule applies.  The magistrate judge did not address the government's assertion that Defendant did not have a reasonable expectation of privacy in the Morton residence.

    After reviewing Defendant's objections and the government's response, the Court afforded the parties an opportunity to submit evidence or argument on the issue of Defendant's legitimate expectation of privacy in the Morton residence.  Defendant alone filed a supplemental memorandum.

Notwithstanding his characterization of the affidavit in the memorandum that he submitted to the magistrate judge,[2] Defendant asserted that "the facts contained within the Affidavit show that [he] was either a resident of the [Morton residence], or overnight guest." He also stated that "there appears to be no *bona fide* dispute that [he] was either a permanent resident or overnight guest at the [Morton residence]." Defendant's reliance on the affidavit to demonstrate his legitimate expectation of privacy in the Morton residence is permissible. *See Maxwell*, 778 F.3d at 732-33. The affidavit states that Defendant has "been identified via social media sites as living there through messages and photographs," that the affiant verified the sites one day before the warrant issued, that "two reliable sources have stated that they have physically seen . . . [Defendant] residing inside the residence," and that the sources so notified the affiant one day before the warrant issued. For present purposes, the Court accepts the affidavit and concludes that Defendant had a legitimate expectation of privacy in the Morton residence. *See Minnesota v. Carter*, 525 U.S. 83, 89 (1998).

### *Probable cause and the good-faith exception to the exclusionary rule*

Having concluded that Defendant had a legitimate expectation of privacy in the Morton residence, the Court turns to the issues of whether the affidavit established probable cause to issue the search warrant and whether the good-faith exception to the exclusionary rule applies.

---

[2] For example, Defendant stated: "Somewhat perplexingly, the Affidavit does not even provide solid evidence that [Defendant] was residing at the [Morton] Property, as claimed. . . . For all that can be gleaned from the Affidavit, [Defendant] could have been a frequent social guest, mistaken for a permanent resident."

"'The existence of probable cause depends on whether, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. O'Dell*, 766 F.3d 870, 873 (8th Cir. 2014) (quoting *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005)). If the issuing court relied solely on an affidavit to establish probable cause to issue a search warrant, only the information that is found within the four corners of the affidavit may be considered in determining whether probable cause existed. *Id.*; *United States v. Hudspeth*, 525 F.3d 667, 674 (8th Cir. 2008). An affidavit that is wholly conclusory does not establish probable cause. *Illinois v. Gates*, 462 U.S. 213, 239 (1983); *United States v. Colbert*, 605 F.3d 573, 576 (8th Cir. 2010). "The affidavit for a search warrant should be examined using a common sense approach, and not a hypertechnical one." *Hudspeth*, 525 F.3d at 674. A reviewing court should afford great deference to the issuing court's resolution of the issue of whether probable cause existed. *O'Dell*, 766 F.3d at 873; *United States v. McIntyre*, 646 F.3d 1107, 1115 (8th Cir. 2011).

"Under the good-faith exception, evidence seized pursuant to a search warrant later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable." *United States v. Jackson*, 784 F.3d 1227, 1231 (8th Cir. 2015); *see Leon*, 468 U.S. at 921-22. The "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23. In *Leon*, the Supreme Court identified four situations in which the good-faith exception would not apply:

>   (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable*"; and (4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid.

*United States v. Proell*, 485 F.3d 427, 431 (8th Cir. 2007) (quoting *Leon*, 468 U.S. at 923). "A court may consider whether the good-faith exception applies before conducting a probable cause analysis." *Jackson*, 784 F.3d at 1231; *see United States v. Clay*, 646 F.3d 1124, 1128 (8th Cir. 2011).

A summary of the affidavit follows. Defendant had "an active Minnesota Department of Corrections Body only Felony Warrant for DWI." He also failed to contact his probation officer through the department of corrections, and he failed to comply with the conditions of his supervised release. Another individual, Travis Walker, had "an active Hennepin County Body only Warrant for Disorderly Conduct." Defendant and Walker "are known Native Mob Gang Members." On March 4, 2014, a Redwood County deputy "observed eight of the Native Mob Gang Members eating in the city of Redwood Falls." A picture of the eight members was given to the Lower Sioux Police Department. Defendant and Walker were identified in it. Defendant and Walker were "identified via social media sites as living there through messages and photographs. In addition, two reliable sources have stated that they have physically seen both Walker and [Defendant] residing inside the residence." The sites were verified, and the sources passed on the information about Walker's and Defendant's residence, one day before the

6

warrant issued. The Lower Sioux Police Department "received several statements from concerned citizens that began on 03/05/14 to the present date of Native Mob Gang Members moving onto the Lower Sioux Community. The concerned citizens have stated the Native Mob intends to take over the illegal drug business on the Community." On March 13, 2014, the Lower Sioux Police Department took a report of shots fired from the [Morton residence]." Most recently on March 24, 2014, "[c]oncerned citizens and other reliable sources have stated that a closet in the upstairs west bedroom has been made into weapons storage. . . . The closet is to contain a sawed off shotgun, possible other guns, knives and narcotics." On March 15, 2014, the Lower Sioux Police Department took a report from an individual at an emergency room in Redwood Falls. The individual sustained a large laceration to the back of his head for which he received several staples. During his statement, the individual stated that he was assaulted by Walker and that he was hit several times with brass knuckles. On March 17, 2014, the Redwood Falls Police Department was called to a fight in progress at a Wal-Mart parking lot. Before police arrived, the suspects left the scene. Walker was identified as a suspect by witnesses at the scene. "Gang Task Force was given the picture to assist in identifying the members. One of those identified was a Christopher Red Elk who is presumably the highest ranking Native Mob member out of Minneapolis." On March 23, 2014, "a reliable source stated that [Defendant] used a sawed off shotgun and fired a round into the wall, a female who was sleeping in the adjoining room had gotten up several minutes before the shot was fired. Upon review of the gunshot hole it exited where the female would have been sleeping." On March 27, 2014, "a reliable source called [the affiant's] work phone

7

stating her mother has started using methamphetamines again and it seems to be very regular as her weight has dropped significantly.  The reliable source stated she is worried about her mother's welfare and wanted the person(s) selling to her stopped.  [The affiant] informed the caller to phone [the affiant] the next time her mother left the residence and follow her so that [the affiant knows] where she is going to purchase narcotics."  At approximately 11 p.m., the reliable source stated that her mother had left the residence and that she "was able to follow her mom to [the Morton residence]."

Officer Lamblez of the Lower Sioux Police Department signed the affidavit and submitted the application for a search warrant on March 28, 2014.  The application sought a warrant to search the Morton residence for: (1) Defendant, (2) Walker, (3) weapons used in two assaults by Walker, (4) controlled substances, (5) containers used to store the controlled substances, (6) records regarding the sale or distribution of controlled substances, (7) firearms and ammunition, (8) "[a]uthority to photograph the above-described items and their location within the premises," and (9) photographs, images, and videotapes "maintained by the suspect which chronicle and record co-conspirators, assets, drug usage and drug transactions."  A state judge issued the search warrant the same day.

Defendant raised a substantial question as to whether probable cause existed to issue the search warrant.  For the most part, information about criminal activity at the Morton residence is attributed to reliable sources.  Nothing in the affidavit recounts the basis for describing the sources as reliable.  Although "such elaboration is not essential for the affidavit to support a finding of probable cause," it is "preferable." *United States v. Brown*, 499 F.3d 817, 821 (8th Cir. 2007).  Despite the affidavit's shortcomings, the

Report and Recommendation concluded that the affidavit established probable cause to issue the search warrant.

As the parties acknowledged, the Report and Recommendation misstated what the affidavit stated about the contents of the closet at the Morton residence. Citing the affidavit, the Report and Recommendation stated that "[c]oncerned citizens and other sources had stated as recently as March 24, 2014, that a closet in the Residence was being used for weapons storage, including a sawed-off shotgun, knives, and brass knuckles." As noted above and acknowledged by the parties, the affidavit did not state that the closet contained brass knuckles. Instead, the affidavit stated that "a closet . . . has been made into weapons storage" and that "[t]he closet is to contain a sawed off shotgun, possible other guns, knives and narcotics." Were brass knuckles among the weapons stored in the closet, an argument could be made that evidence of Walker's assault of the individual on March 15 would be found at the Morton residence.

There are other errors in the Report and Recommendation's recitation of the affidavit. According to the Report and Recommendation, "Defendant had an active arrest warrant for violating a condition of supervised release," as well as "an active 'body only' warrant for disorderly conduct." As noted above, the affidavit stated that Defendant had "an active Minnesota Department of Corrections Body only Felony Warrant for DWI"; that he had "failed to contact his Probation Officer"; and that he had "failed to comply with his active conditions of supervised release." The affidavit did not state that Defendant had an arrest warrant for disorderly conduct. It is Walker who had "an active Hennepin County Body only Warrant for Disorderly Conduct."

9

The Report and Recommendation also mischaracterized a report about an individual who was using methamphetamine entering the Morton residence. According to the Report and Recommendation, "[a]nother source told Officer [Lamblez] that her mother had started using methamphetamines; later, the same source informed Officer [Lamblez] that she had followed her mother and seen her enter the Residence." The affidavit did not state that the source saw her mother enter the residence. It stated that the source "was able to follow her mom to [the Morton residence]."

Given the Report and Recommendation's erroneous recitation of the affidavit, the Court would not rely on it under any circumstances to conclude that the affidavit established probable cause to issue the search warrant. The Court need not resolve the issue of whether the affidavit established probable cause to issue the search warrant at this time. The Court proceeds to the issue of whether the good-faith exception to the exclusionary rule applies.

No assertion that the issuing court was misled by false information in the affidavit has been made. No assertion that the issuing court abandoned its judicial role has been made. The warrant is not "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 923.

The affidavit in this case is unlike those at issue in *United States v. Herron*, 215 F.3d 812 (8th Cir. 2000), which Defendant cited in the memorandum that he submitted to the magistrate judge to support the proposition that the affidavit "contained obvious deficiencies that a reasonably well-trained officer ought to spot easily." In *Herron*, the

government conceded that affidavits failed to establish probable cause to search a residence, and the Eighth Circuit concluded that the good-faith exception did not apply. 215 F.3d at 814-15. The affidavits provided "no evidence that there was any illegal activity at the [defendant's] residence and no evidence that [the defendant] ever participated in the cultivation of the marijuana found at [a nearby farm]." *Id.* at 814. "The problem is not a technical legal deficiency; the affidavits simply do not say very much about [the defendant] or his residence." *Id.*

Here, the affidavit indicated that evidence of illegal activity would be found at the Morton residence. For instance, citing "reliable" sources, the affidavit indicated that a sawed off shotgun and narcotics were at the Morton residence. Although the affidavit did not state the basis for describing the sources as reliable, this omission did not render the affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *Cf. United States v. Warner*, 894 F.2d 957, 960 (8th Cir. 1990) (three tips—two described as "confidential and reliable" and one as "anonymous"— deemed "mutually corroborative"). Moreover, the state judge and the magistrate judge, albeit under an erroneous recitation of the affidavit's contents, concluded that the affidavit established probable cause to issue the search warrant. *Cf. Proell*, 485 F.3d at 432 ("Considering that both the issuing state court judge and the district court determined that the testimony established probable cause for the search warrant to issue, we conclude that the officers were not entirely unreasonable in believing that the testimony provided probable cause to issue the warrant."). The Court concludes that the good-faith exception

11

to the exclusionary rule applies. The Court therefore denies Defendant's motion to suppress.

*Conclusion*

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. The parties shall file the materials that they submitted in response to the Order dated September 3, 2015.

2. The Court declines to adopt the Report and Recommendation [Docket No. 33].

3. Defendant's motion to suppress [Docket No. 17] is DENIED.

Dated: October 13, 2015

                                          s/Joan N. Ericksen
                                          JOAN N. ERICKSEN
                                          United States District Judge